Alonso GOMEZ, Petitioner—Appellant,

v.

Cheryl PLILER, Warden of California State Prison at Sacramento (New Folsom), Respondent—Appellee.

No. 05–56619.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2006.

Filed Dec. 13, 2006.

Charles M. Bonneau, Jr., Esq., Law Offices of Charles M. Bonneau, Sacramento, CA, for Petitioner–Appellant.

Thomas C. Hsieh, Dag, Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellee.

Before: PREGERSON, THOMPSON, and TALLMAN, Circuit Judges.

## MEMORANDUM *

Alonso Gomez appeals the dismissal of his habeas corpus petition challenging his conviction for the first degree murder of Nora Ouch and the attempted murder of Jason Ly. We reject Gomez's claim that the state trial court's denial of his motion to sever his trial from that of co-defendant Alfredo Figueroa violated his due process rights by resulting in the admission of evidence regarding Figueroa's later shooting of two victims.[1] We affirm the denial of habeas corpus relief.

## I

The United States District Court for the Central District of California ("district court") reviewed the decision of the California Court of Appeal ("state court") affirming Gomez's convictions on direct review.

Gomez and Figueroa were jointly charged in the Los Angeles County Superior Court ("trial court") with crimes related to street shootings committed on January 16, 1999, specifically the murder of Ouch and the attempted, willful, deliberate, and premeditated murder of Ly. CAL.PENAL CODE §§ 187(a), 664/187(a). Gomez and Figueroa were also charged with firearm and gang enhancement allegations. CAL.PENAL CODE §§ 12022.5(a), 12022.53(b)–(e)(1), 186.22(b)(1). Figueroa alone was charged with several crimes related to the shootings of Kroeusna Sen and Tarere Orng, committed on January 17, 1999.

Gomez and Figueroa were jointly tried before a superior court jury, which convicted Figueroa of the January 17 crimes but deadlocked as to the January 16 crimes. A mistrial was declared as to those crimes.

Gomez and Figueroa were jointly retried on the January 16 crimes before a second jury, which found them guilty of first degree murder and attempted murder, and found true the firearm and street gang enhancements. Gomez was sentenced to state prison for a term of forty-seven years to life.

Because the facts of the underlying crimes and procedural history are known to the parties and not in dispute, we do not recount them further here.

## II

We review the district court's decision to deny Gomez's habeas petition de novo. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir.2004). The district court's conclusion that the standards established by the Anti-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Figueroa is not part of this appeal.

terrorism and Effective Death Penalty Act of 1996 ("AEDPA") are satisfied is a mixed question of law and fact that we also review de novo. *Id.* at 965.

Under the highly deferential AEDPA standard, we must uphold the state court's decision affirming Gomez's convictions unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Even if we find that the AEDPA standard was satisfied, we may grant relief only if the state court's error had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting, and adopting, standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), or if we are "in grave doubt" about the harmlessness of the error, *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

## III

We affirm the district court's conclusion that the state court's rejection of Gomez's misjoinder claim was neither contrary to nor an unreasonable application of established federal precedent.

The improper joinder of defendants does not violate the Constitution unless "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane,* 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *see Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (holding that a district court should grant severance under Federal Rule of Criminal Procedure 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"). A petitioner who raises a claim of misjoinder or failure to sever his trial from that of a co-defendant bears the burden of demonstrating that a joint trial rendered his trial fundamentally unfair. *Grisby v. Blodgett,* 130 F.3d 365, 370 (9th Cir.1997); *see also United States v. Matta–Ballesteros,* 71 F.3d 754, 770–71 (9th Cir.1995) (upholding trial court's denial of defendant's motion for severance from co-defendants, even though evidence was introduced involving three homicides and marijuana enterprise with which defendant was not involved); *United States v. Escalante,* 637 F.2d 1197, 1201–02 (9th Cir.1980) (upholding denial of severance, even though evidence relating to co-defendant's connection to organized crime and participation in murder was admitted).

Gomez has not met his AEDPA burden. First, the state court held that the January 17 evidence was admissible for multiple purposes. The court found:

> The evidence about the January 17 crimes was admissible against Gomez (without regard to whether he was tried with Figueroa or separately) to prove his motive, intent, and a common design with regard to the gang use enhancement allegations, and with regard to the substantive charges. All of the victims were Asian males, and the gang expert's testimony established Gomez's and Figueroa's gang involvement and motive, all of which was relevant to prove that the January 16 shootings were part of a pattern of criminal gang activity, *and* intentional, premeditated, and deliberate.

The state court also cited favorably the trial court's determination that the "overwhelming" probative value of the January 17 evidence outweighed any possible prejudice. We must defer to a state court's application of its own rules of evidence. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112

S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding that a federal court on habeas review must not review state court rulings on admissibility of evidence under state law); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules.").

The only question before us is whether the admission of the January 17 evidence "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 112 S.Ct. 475 (citation omitted); *see also id.* at 75, 112 S.Ct. 475; *Alberni v. McDaniel*, 458 F.3d 860, 864–66 (9th Cir.2006). Because the January 16 and 17 incidents "happened close in time (just a day apart), in a similar manner (two assailants opened fire on a public street), and against similar victims (all innocent, vulnerable, young Asian males)," we agree with the state court that the January 17 evidence was probative of the elements of the gang enhancement.[2] *See* CAL. PENAL CODE § 186.22(e). Because this evidence was relevant to an issue in the case, Gomez's due process rights were not violated by admission of the evidence. *Estelle*, 502 U.S. at 69–70, 112 S.Ct. 475.

Second, the evidence presented regarding the January 17 shootings did not implicate Gomez. No witness identified Gomez or otherwise suggested his involvement in the January 17 crimes. Sen identified Figueroa from a photographic line-up, at two prior court hearings, and in court at the second trial. Sen testified that he could not identify the second shooter. Also, the ballistics evidence suggested that Figueroa, but not Gomez, was involved in those shootings. The prosecution never argued that Gomez was a suspect in the January 17 shootings against Sen and Orng.

Third, any risk of prejudice due to joinder was neutralized by the trial court's instructions to the jury. The Supreme Court has recognized that a trial court may eliminate a risk of prejudice from misjoinder by giving instructions directing jurors to give separate consideration to each defendant and each charge. *Zafiro*, 506 U.S. at 539–41, 113 S.Ct. 933; *Lane*, 474 U.S. at 450, 106 S.Ct. 725. Here, the trial court instructed the jurors that they "must decide separately whether each of the defendants is guilty or not guilty" and that "[e]ach crime is a distinct crime. You must decide each count separately." Moreover, the trial court orally instructed the jurors that evidence of the January 17 shootings was "introduced for the purpose of showing that the defendant Figueroa only committed a crime other than that for which he is on trial."[3] Because "juries

---

**2.** The gang enhancement required the prosecution to prove "a pattern of criminal gang activity," defined as the commission of two or more enumerated offenses within a specified period, committed on separate occasions, by two or more people. *See* CAL.PENAL CODE, § 186.22(a), (e); *People v. Gardeley*, 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713, 720, 725–26 (1996). Because we agree with the state court that the evidence was relevant to the gang enhancement, we do not need to consider its relevance to elements of substantive charges.

**3.** The written instruction read: "Evidence has been introduced[,] that is the event of January 17, 1999, for the purpose of showing that the defendant Figueroa committed a crime other than that for which he is on trial." While the word "only" does not appear in the written instruction, the clear meaning of both instructions was that evidence of the January 17 shootings only implicated Figueroa. Neither version of the instruction indicated that Gomez was involved in those shootings. *See Estelle*, 502 U.S. at 72, 112 S.Ct. 475 (noting that, in evaluating an improper instruction, courts must determine whether there was a reasonable likelihood the jury would have ap-

can be trusted to follow the trial court's instructions," *Parker v. Randolph*, 442 U.S. 62, 75 n. 7, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), *overruled on other grounds by Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the trial court's instructions sufficed to dispel any possible prejudice from misjoinder.

Finally, Gomez cannot meet the additional requirement of demonstrating that the failure to sever resulted in "actual prejudice." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710; *Stark v. Hickman*, 455 F.3d 1070, 1072 (9th Cir.2006) ("Furthermore, even if the state court's ruling [on a due process claim] is clearly contrary to or an unreasonable application of Supreme Court precedent, such an error would justify relief only if the error had a 'substantial and injurious effect or influence in determining the jury verdict.'" (citation omitted)). To obtain federal habeas relief, Gomez bears the burden of establishing this alleged error. *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. He has not met this burden. In addition to the cross-admissibility of the January 17 evidence and the curative effect of the trial court's limiting instructions, the prosecution's evidence of guilt was, if not overwhelming, certainly weighty. Two witnesses, Ly and Luz Sanchez, identified Gomez as one of the shooters in the January 16 incident. A police officer testified that Gomez fled when he attempted to arrest him. And the gang evidence showed that Gomez had a motive for shooting Ly and Ouch. All of this testimony and evidence would have been admissible in a separate trial against Gomez. Therefore, even if the trial court erred in denying Gomez's motion to sever, this error did not substantially influence the jury's verdict.

plied the instruction in a way that violated a constitutional right, given the entire trial record).

The decision of the state court was not an unreasonable application of Supreme Court precedent, and this record does not show a constitutional violation of due process sufficient to entitle Gomez to habeas relief. The judgment of the district court is

AFFIRMED.